IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIEL O'HARE<br><br>Plaintiff,<br><br>vs.<br><br>MCLEAN PACKAGING CORPORATION<br><br>Defendant. | Civil Action No.: 1:08-cv-2083<br><br>MOTION DATE: April 20, 2009 |

**MEMORANDUM OF LAW OF DEFENDANT, MCLEAN PACKAGING CORPORATION, IN REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, McLean Packaging Corporation (hereinafter "Defendant" or "McLean") by its undersigned counsel, hereby submits this memorandum of law in reply to the memorandum of law submitted by Plaintiff in opposition to McLean's motion for summary judgment.[1]

I. **LEGAL ARGUMENT**

A. **Summary judgment should be granted on Plaintiff's interference claim.**

McLean did not interfere with Plaintiff's rights under the FMLA, and the testimony of Jeff Besnick as well a January 21, 2008 email, support that there was such no such interference. Plaintiff claims that Jeff Besnick denied him leave and advised him that he had to call in sick. <u>Plaintiff has no documents to support this claim</u>. A review of Jeff Besnick's testimony suggests that Plaintiff's contention is unfounded. In January, 2007, Plaintiff came to Besnick requesting additional leave, advising that he would benefit from some recuperation time. Besnick Deposition, Ex. "F," 16. Besnick replied that "it was in the best interest of both he and

---

[1] All exhibits referenced herein are to the exhibits submitted with the initial memorandum of law in support of McLean Packaging Corporation's motion for summary judgment.

659509_1

the company to grant him that additional time." Besnick Deposition, Ex. "F," 16. Besnick then forwarded an email to McLean's office manager, advising that Plaintiff would be taking additional time of approximately 7-10 days. Besnick Deposition, Ex. "F," 16. That email prepared by Besnick on January 21, 2008 <u>confirms</u>, his deposition testimony:

> It was agreed upon that Dan O'Hare will begin using his company benefit of one month [at] half pay for medical leave now that he has exhausted his one month at full pay. This began using three days last week (Tues-Wed-Fri) and will continue for this full week of 1/21, returning on 1/28. January 21, 2008 email from Jeff Besnick to Marilyn Gutstein, Exhibit "G."

Since Plaintiff was granted additional leave in January, McLean did not interfere with his rights under the FMLA.

### B. <u>Summary judgment should be granted on Plaintiff's claim for retaliation.</u>

In response to McLean's argument that there is no "temporal proximity" between the protected activity and the alleged discrimination, Plaintiff references <u>Ramirez v. Oklahoma Dep't of Mental Health</u>, 41 F.3d 596 (10th Cir. 1994). This decision by the Tenth Circuit is distinguishable from the Third Circuit cases cited by McLean, holding that a period of three weeks was found not to be "unduly suggestive" in <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 114 (3d Cir. 2003), and a period of two months was found by the court to be not "unduly suggestive" in <u>Williams v. Phila. Hous. Auth. Police Dep't</u>., 380 F.3d 751, 760 (3d Cir. 2004). Since <u>more than two and one-half months passed</u> from the time Plaintiff returned from his second medical leave until the date that he was laid off, plaintiff cannot establish a temporal proximity between his medical leave and the alleged discrimination.

There is also no evidence to establish the existence of a pattern of antagonism in the period between Plaintiff's medical leave and his layoff. By contrast, McLean accommodated every request made by Plaintiff while he was experiencing medical problems. As stated above,

Jeff Besnick granted Plaintiff additional leave in January, 2008 to accommodate Plaintiff's request for time to recuperate. Besnick Deposition, Ex. "F," 16. Upon returning to work in January, 2008, Plaintiff had been advised by his physician that he should not operate a forklift or do any heavy lifting. Plaintiff's Deposition, Ex. "C," at pp. 94-96. Plaintiff advised his supervisor, R. J. Howarth, of these restrictions, and Howarth had no problem with such restrictions. Plaintiff's Deposition, Ex. "C," at p. 97. Although Plaintiff argues that McLean was being antagonistic when the company requested Plaintiff to train another employee in his job, Plaintiff ignores the following factual circumstances surrounding that request:

1) In February, 2008, Christine O'Connor was hired to get McLean ISO-certified, a special quality designation involving more stringent quality requirements, and Gudaitus was asked to assist O'Connor full-time. Gudaitus Deposition, Ex. "H," at pp. 52-55 and Howarth Deposition, Ex "E," at pp. 24-25.

2) Due to this change in her job duties, Gudaitus could no longer fill in for Plaintiff in the shipping department when he was out sick or on vacation. Gudaitus Deposition, Ex. "H," at p. 53; Howarth Deposition, Ex "E," at pp. 24-25.

3) Howarth asked Plaintiff to train Vince Niroda, the assistant plant manager, in the duties of the shipping manager so Niroda could fill in and back up Plaintiff when necessary. Howarth Deposition, Ex. "E," at p. 26.

Accordingly, there is no evidence to show that anyone at McLean was antagonistic toward Plaintiff after he returned from his medical leaves. Without evidence of a temporal proximity or a pattern of antagonism, Plaintiff cannot establish the causal connection prong required to support a *prima facie* case of retaliation. Summary judgment must therefore be granted on that claim.

### C. Plaintiff has failed to produce any evidence that McLean's stated reason for his layoff was pretextual.

Overwhelming evidence of serious business issues facing McLean establishes that McLean's reduction in force was a legitimate, non-discriminatory reason for Plaintiff's layoff. The fact that McLean's business slowdown occurs during one of the worst economic recessions in United States history lends further credibility to its decision to institute a reduction in force. There is no evidence, as Plaintiff has lead the court to believe in his opposition, raising an issue of fact or contradicting McLean's proferred reason for Plaintiff's layoff.[2] What is most compelling is that <u>Plaintiff's own testimony</u> supports McLean's reasoning for instituting a reduction in force:

1) In February, 2008, Plaintiff observed that the McLean Packaging plant was slow, and such conditions continued in March, 2008. Plaintiff's Deposition, Ex. "C," pp. 110-111.

2) Conditions were so slow that Plaintiff told R. J. Howarth that he was willing to lay off one of the two employees he supervised because the shipping department was not very busy, and he did not need both employees. Plaintiff's Deposition, Ex. "C," at p. 123.

The testimony of other McLean employees working in various departments with varying responsibilities confirms Plaintiff's testimony that business was slow. Danette Gudaitus, an hourly employee, testified concerning the lack of work at McLean as follows:

> . . . we had no work at the time. We had lost a big account. It had to have gone down to 50 percent of what we were doing. Gudaitus Deposition, Ex. "H," at pp. 25-26.

Vince Niroda, the assistant plant manager, observed that the entire plant was slow during the early part of 2008:

---

[2] Plaintiff misstates here the court's ruling in <u>Zelinski v. Pennsylvania State Police</u>, 108 Fed. Appx. 700, 707 (3d Cir. 2004). <u>See</u> page 11, lines 5,6 of Plaintiff's Memorandum of Law. With respect to the issue of inconsistency, the court held that "[a] plaintiff can establish the <u>causation element</u> [of a retaliation claim] by providing evidence of inconsistent reasons for the adverse employment action."

> Throughout the plant it was slow. I mean, in printing, in stamping and dye cutting, you know, in general - - you know, our windowing department, everything. <u>See</u> Deposition Testimony of Vince Niroda, at pp. 27-28, Exhibit "L."

There are no inconsistencies relating to McLean's decision to institute a reduction in force. David Seidenberg, a McLean vice-president, testified concerning the following business and economic conditions which faced McLean in the beginning of 2008:

> We were extremely slow in the Moorestown facility. We had lost a major customer. We, in the process of moving the facility and putting additional equipment into the new facility, had taken on a huge amount of overhead and a major plant-wide layoff was put into effect. Seidenberg Deposition, Ex. "A," at p. 31.

Because of these economic conditions, David Seidenberg, Jeff Besnick and R.J. Howarth decided to institute a reduction in force in February, 2008, which included both managerial and plant positions. Seidenberg Deposition, Ex. "A," at pp. 30-32 and Besnick Deposition, Ex. "F," at p. 23.

Any inconsistencies alleged by Plaintiff do not contradict that McLean's reduction in force was the legitimate, non-discriminatory reason for Plaintiff's layoff. To the extent there are inconsistencies in the testimony, they are immaterial or facts not found in the record. For example, Plaintiff states that "Niroda was still given a raise along with every other employee of Defendant in June 2008 . . . <u>See</u> page 12, line 8 of Plaintiff's Memorandum of Law. Plaintiff references Niroda's testimony in support of this alleged fact. <u>However, Niroda testified that he had not received a raise in the last year</u>. Niroda Deposition, Ex. "L," p. 36. There are additional examples where Plaintiff misleads the court by stating facts not contained in the record. Plaintiff states that ". . . the record and documents in this case reveal that every year in the first part of the year it is slow and there are extensive layoffs . . ." <u>See</u> page 12, line 25 of Plaintiff's

Memorandum of Law. Plaintiff fails to cite to any deposition testimony to support this alleged fact.

Plaintiff's layoff was part of a reduction in force that included the layoff of twelve employees during the February-April 2008 period. Employees in the following departments were laid off:

1) Andrew Howard (dye cutter, material handler);
2) Saysana Lokaphone (general plant worker);
3) Donna Barron, Ramona Diaz, Joanne Fleckenstein, Edward Omidanski, Deborah Blake, Sandra Rainey (packers);
4) Chris Coyle (forklift operator in shipping department); and
5) Filiberto Melgar (maintenance).

Seidenberg Deposition, Ex. "A," pp. 54-56 and "Employment History" portion of Employees' files, Exhibit "O."

Plaintiff's position was one of two management positions which were also eliminated in 2008. Seidenberg Deposition, Ex. "A," at p.37. It defies reason to suggest that a layoff of this magnitude during such a confined time period was not based upon a thoughtful decision by McLean's management with consideration of the business and economic issues facing the company.

The "reduction in force" cases cited by Plaintiff in its opposition brief may be distinguished legally and factually from this matter. In Sullivan v. The Cato Corp., WL 644469 at *5 (D.S.C. 2006), the court found that a factual question was presented based upon the fact that defendant's decisions to institute a reduction in force and to terminate plaintiff were made during the same time that plaintiff took FMLA leave. In this matter, McLean's decision to institute a reduction in force was made in February, 2008, after Plaintiff returned from his

6

medical leave, and more than two and one-half months passed from the time Plaintiff returned from his second medical leave until the date that he was laid off.

In Wood v. Dollar Rent-A-Car Systems, Inc., 128 Fed.Appx. 620 (9th Cir. 2005), the court's decision to reverse the ruling of the district court was in no way based upon defendant's termination of plaintiff pursuant to a reduction in force. Here the court concluded that the district court had erred in granting defendant summary judgment, finding that there was "temporal proximity between [plaintiff's] protected activity and [defendant's] adverse employment actions, including removing [plaintiff's] computer and office furniture, ordering [plaintiff] out of his cubicle, and ultimately terminating [plaintiff]." Id.

In Vanderhoof v. Life Extension Institute, 988 F.Supp. 507, 516 (D.N.J. 1997), plaintiff claimed she was terminated "because she did not fit the 'youthful' image that [defendant] wished to project" and pointed to the defendant's recent practice of hiring younger front office staff members. None of these facts are argued by O'Hare in the instant matter. In addition, Vanderhoof referenced monthly management reports indicating that the Morristown office was profitable, and therefore since she was the only employee terminated in that office, the reduction in force explanation was a pretext. Id. By contrast, there is substantial evidence establishing that McLean was not performing well financially. From May, 2007-May, 2008, McLean's net income decreased approximately $1.5 million to $549,747.00. See McLean's Statement of Income and Retained Earnings for the year ended May 31, 2008, Exhibit "J." In addition, Joseph Fenkel, one of the owners of McLean, testified that serious business and economic conditions, faced McLean in the beginning of 2008 including:

      a) a decrease in business;
      b) a loss of a major account, Bath & Body Works;
      c) increased costs due to the move of the plant from Philadelphia
         to Moorestown and the purchase of the new machinery; and

d) slow conditions in the plant.

See Deposition Testimony of Joseph Fenkel, at pp. 37, 44, Exhibit "K." The evidence which Vanderhoof presented to support pretext does not exist herein.

Finally, plaintiff attempts to support his pretext argument with the decision in Liu v. Amway Corp., 347 F. 3d 1125 (9th Cir. 2003). Initially, it must be pointed out that the Ninth Circuit found that the district court had erred in applying the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), a framework which the Ninth Circuit has declined to apply. It is that exact analysis which the Third Circuit applies in deciding claims for retaliation under the FMLA. See Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir. 2001). Furthermore, the statement referenced by O'Hare in his opposition that "termination within the context of a reduction in force does not insulate [a] defendant from liability for violating FMLA" is set forth in a footnote by the Ninth Circuit; the basis of the court's decision in finding that defendant used FMLA leave as a factor in plaintiff's termination was evidence submitted by plaintiff from which a jury could conclude that defendant "took the fact that she took leave into account in giving her a low score on her evaluation [in] recommending her for termination." Liu, 347 F.3d at 1136. The Third Circuit recognized that an employer's decision to institute a reduction in force is a legitimate, non-discriminatory reason to terminate an employee in Lepore v. LanVision Systems, Inc., 2004 U.S. App. LEXIS 21742 (3d. Cir. October 19, 2004), and the evidence in the record is compelling that an economically necessitated reduction in force was the true reason for O'Hare's layoff.

**D. Summary judgment should be granted on Plaintiff's Perceived Handicap and Handicap Discrimination claims.**

Referencing Soules v. Mount Holiness Mem. Park, 354 N.J.Super. 569 (App.Div. 2002), plaintiff argues that by virtue of the fact that he was undergoing testing he may be

8

perceived as having a handicap. See page 18, lines 6-7 of Plaintiff's Memorandum of Law. Plaintiff takes a gigantic leap in making that argument and ignores the facts in the instant matter which establish that there was no evidence to indicate that O'Hare had a perceived handicap. The purpose of medical testing is to diagnose a medical condition. No physician may conclude that a patient has a medical condition prior to the time that the test results are performed and then reviewed. Therefore, how could McLean perceive O' Hare as having a handicap simply based upon the fact that he was scheduled to undergo medical testing. There is no evidence that establishes that McLean perceived O'Hare as having a physical or mental condition that would qualify as disabled under the NJLAD. When Plaintiff returned, he was able to perform all of the managerial aspects of his job. Plaintiff's Deposition, Ex. "C," at p. 95. Jeff Besnick, McLean's general manager, did not perceive Plaintiff as having a disability, which is supported by his testimony that he did not even recall Plaintiff having any restrictions when he returned to work. Besnick Deposition, Ex. "F," at p. 14. Furthermore, during the time that Plaintiff said he had work restrictions, no one made any complaints that work was not getting done. Plaintiff's Deposition, Ex. "C," at p. 122. There is simply no evidence that McLean perceived that Plaintiff was disabled and could not perform his responsibilities, and accordingly Plaintiff cannot establish a *prima facie* case of perceived handicap discrimination under the NJLAD.

With respect to Plaintiff's handicap discrimination claim, Plaintiff argues that he suffered from two separate handicaps which prevented him from working for an extended period of time. See page 18, lines 17-18 of Plaintiff's Memorandum of Law. Once again, plaintiff ignores the facts which establish that he did not suffer from a disability upon returning from his medical leave. Plaintiff was advised by his physician that he could return to work as long as he

9

did not operate a forklift or do any heavy lifting. Plaintiff's Deposition, Ex. "C," at pp. 94-96. Those restrictions do not constitute a disability as defined in N.J.S.A. § 10:5-5 q. When Plaintiff returned from medical leave, he told Howarth that he had no restrictions, other than being on a diet. Howarth Deposition, Ex. "E," at p. 21. When plaintiff returned to work, he was able to perform the duties of his position as shipping manager, other than lifting duties, which, prior to taking medical leave, he only performed when the hourly employees in his department were not available and were, therefore, only peripheral to his job. Plaintiff's Deposition, Ex. "C," at pp. 94-96. From the time he returned to work in January, 2008, (and despite any restrictions Plaintiff alleges he had), no one expressed any complaints that Plaintiff's work was not getting done. Plaintiff's Deposition, Ex. "C," at p. 122. In addition, approximately six weeks after Plaintiff returned, he gradually started to resume operating the forklift and performing heavy lifting. Plaintiff's Deposition, Ex. "C," at pp. 122-123. Plaintiff cannot establish that he had a disability as defined in N.J.S.A. § 10: 5-5 q., and therefore he cannot establish the first prong required to support a *prima facie* case of discrimination.

Plaintiff also has presented no evidence to support the fourth prong of a *prima facie* case of discrimination under the NJLAD, as he has no evidence to establish that McLean sought another employee to perform his position as shipping manager after he left. Plaintiff's statement that he was requested to train his replacement upon returning from medical leave ignores certain relevant facts. When O'Hare returned, McLean requested him to train Vince Niroda, since Danette Gudaitus, O'Hare's current backup, was being reassigned to assist Christine O'Connor with ISO quality control. Gudaitus Deposition, Ex. "H," at p. 53; Howarth Deposition, Ex "E," at pp. 24-26. After O'Hare was laid off, McLean did not hire a new employee to perform the shipping manager position; instead, McLean did away with the shipping manager position and

assigned Niroda, the assistant plant manager, to oversee the shipping department in addition to his existing duties. Besnick Deposition, Ex. "F," pp. 37-38.

Plaintiff has failed to state a *prima facie* claim for discrimination because of a disability, and it is therefore respectfully suggested that summary judgment be granted on that claim.

## II.      CONCLUSION

For the foregoing reasons, Defendant McLean respectfully requests that its motion for summary judgment be granted and that the Complaint be dismissed in its entirety.

Respectfully submitted,

**SPECTOR GADON & ROSEN, P. C.**

By: /s/ Barry S. Brownstein
Barry S. Brownstein
1635 Market Street, 7th Floor
Philadelphia, PA  19103
(215) 241-8888
(215) 241-8844 (fax)
Attorney for Defendant, McLean
Packaging Corporation

Dated: April 13, 2009